## Kuhns Estate

*George M. Lynch,* for Arthur B. Kuhns.
*Denis P. Zuzik,* for Mary Kuhns.

MIHALICH, *P.J.,* May 4, 1989 — This difficult matter comes before the court on exceptions to the schedule of distribution in the estate of Barry Lee Kuhns raised by his natural father, Arthur B. Kuhns. While the matter is not one free of doubt, the court is convinced that the exceptions of Arthur Kuhns must be dismissed.

Barry Lee Kuhns died intestate on April 8, 1986. He left behind neither spouse nor issue, and was survived only by his parents, Mary Kuhns and Arthur B. Kuhns, and three brothers. Mary and Arthur have been divorced for many years and Arthur and Barry did not enjoy a close relationship throughout Barry's lifetime.

Approximately one week after the death of Barry Kuhns, Arthur Kuhns met with two of his sons, John and Thomas, at the residence of Barry Kuhns. During this meeting, Arthur and his sons examined Barry's residence, walking from room to room taking an unofficial inventory of its contents. From the testimony, it is clear that Arthur knew that his

deceased son was the owner of this home, although he also believed that a mortgage encumbered it, and he also believed that his son had owned liquid assets such as bank accounts, cash and savings bonds.

At the time of this meeting, Arthur Kuhns executed documents renouncing his right to co-administer the estate of Barry Kuhns with Mary and also executed the document which is the subject of the present controversy. This document, hand-drawn by his son John, stated as follows:

"I, Arthur B. Kuhns father of deceased Barry Lee Kuhns of 2705 Raymond Ave., Latrobe, Pa. wish to receive the following from his estate:

"1984 Datsun King Cab pickup with cap

"1 homemade cross bow

"1 lawn mower

"1 gun (snub nose blank)

"Miscellaneous fishing equipment

"In receiving the above items, I wish to relinquish all claims to his estate. The remaining assets shall go to his mother Mary Kuhns for her to do with as she sees fit.

"/s/ Arthur B. Kuhns

"/s/ Mary Kuhns

"Witness: /s/ Neil A. Brant

"Witness: /s/ Roxanne L. Ament

"Notary: /s/ Judith R. Moffat"

While the testimony on this point was somewhat conflicting, the court concludes that Arthur Kuhns was fully aware of the nature of this document as well as its effect of denying him the opportunity to claim anything further from the estate of his deceased son. This conclusion is based upon the court's consideration not only of the testimonies of the members of the Kuhns family present when the document was drawn, read, and executed, but also

upon the testimony of Neil Brant, a neighbor who was present when the document was read to Arthur Kuhns and when Arthur acknowledged his understanding of its contents and import. There is no evidence that this document was executed by an individual mentally or physically incapable of appreciating the significance of it; nor is there any evidence of undue influence or duress resulting in its execution. Counsel for Arthur Kuhns has also withdrawn from this court's consideration the issue of fraud, acknowledging that the evidence simply will not support that finding.

At some point after the execution of this document, Arthur Kuhns decided that he had made an unwise choice in signing it. The gross value of the estate of Barry Kuhns was determined to be $46,036.92, which included the net proceeds of the sale of the home in which this document was executed. Those net proceeds amount to $32,364.81, the gross sale price being $46,000, less a mortgage of $12,245.62 and closing costs of $1,389.57. The total net assets of the estate of Barry Lee Kuhns were valued at $35,830.87, of which one-half would have been the share of Arthur B. Kuhns had he not executed the subject document.

The parties have struggled to classify the subject document in a category common to law of decedents' estates in Pennsylvania. Initially, we must consider whether the document is a disclaimer under section 6201 of Title 20 Pa.C.S.

Under section 6201, an individual who stands to acquire an interest in property through operation of intestate succession may disclaim that interest by executing a written disclaimer which is to meet three criteria. The disclaimer shall: (1) describe the interest disclaimed; (2) declare the disclaimer and extent thereof; and (3) be signed by the disclaim-

ant. In the present case, the document appears to satisfy sections 2 and 3 of section 6201, leaving only the question of whether it otherwise satisfied section 1.

Able counsel for the parties have been unable to cite the court to controlling precedent for the interpretation of this section in Pennsylvania law. The court also has had a difficult time in discerning controlling precedent since those cases which generally discuss the renunciation, release or disclaimer of an interest such as this either relate to issues other than the one presented here, see *In re Zindel's Estate,* 23 D.&C. 3d 282 (1982), or have been decided under older versions of the statute giving little authoritative insight to the court as to the current interpretation of its language. See *In re Becker's Estate,* 352 Pa. 452, 43 A.2d 4 (1945); *Dorn Estate,* 12 Pa. Fiduc. 439 (1962); *Days Estate,* 55 D.&C. 2d 536 (1971). It may be noted, however, that the older cases seemed to permit more general language to be effective for a disclaimer and it must also be observed that in the official commentary to section 6201 it is noted that a purpose for its enactment was to "liberalize the property law requirements for a disclaimer so that legitimate attempts to avoid taxes on unwanted gifts will not be frustrated by property law provisions that are stricter than those required for tax purposes."

Counsel for Arthur Kuhns has drawn the court's attention to two cases from other jurisdictions which allegedly shed light on this issue. We find the case of *Winkler v. Bauman,* 452 N.Y. Supp. 2d. 440 (1982) to be inapposite to the present situation. The case of *Faught v. Estate of Faught,* 730 S.W.2d 323 (Tenn. 1987), however, is a case factually similar to the case at bar. The difficulty of use of the *Faught* case to resolve the present matter, however, is that

the *Faught* opinion deals with a disclaimer statute which is different in an important respect from section 6201 of the Pennsylvania Estate Code. The Tennessee statute interpreted in *Faught* required that the disclaimer "describe the *property* or part thereof or interest therein renounced." *Id.* at 324. One of the reasons the court refused to acknowledge the disclaimer in *Faught* was its failure to describe the *property* disclaimed. *Id.*

While using the phrase "interest in property" in the beginning of section 6201, our legislature has chosen to simply require that a disclaimer "describe the interest disclaimed." While there is by no means a clear-cut definition wholly applicable to this purpose, we find that use of the term "interest" requires something different than a strict and precise delineation of the property disclaimed.

An "interest" in an estate is not necessarily an interest in any particular item of property in the estate. Rather, an "interest" is normally an interest in a share of the net proceeds of an estate once all proper deductions have been made. If it was truly the intent of our legislature to "liberalize" the law regarding disclaimers, it would appear appropriate to require only that the individual recognize what interest he or she may have in the estate before disclaiming it instead of having to go through the more rigorous requirement of identifying all items of personalty and realty which may be contained within the estate itself.

Again, in the unfortunate absence of clear appellate guidance in this area, we are constrained to conclude that the subject document would meet the disclaimer statute given that, within its body, the disclaimant noted and recognized his interest in the estate of his deceased son and clearly opted to take specified property in lieu of a more

generalized share. While this case certainly should stand for the proposition that legal documents are best prepared by those whose legal training qualifies them to appreciate the importance of a precisely drawn writing, we believe that this document meets the rather broad standards of section 6201.

It would be with great trepidation that this court would rest the entirety of its resolution of this matter on its finding that the document meets the standard of a disclaimer of section 6201. We are much more comfortable, then, in concluding that the document is a binding agreement between the intestate heirs and one properly enforced by this court.

We begin this phase of the analysis by recognizing certain facts we have found in this record. First, we find that Arthur Kuhns was entirely competent to enter into an agreement disposing of certain interests he had in the estate of his deceased son. Secondly, we find no evidence of fraud, overreaching, undue influence or duress on the part of those who were present when this document was executed. Moreover, we find that there was no negligent or intentional failure to disclose any material fact to Arthur Kuhns by his sons or his ex-wife. This agreement was executed approximately one week after Barry Kuhns had died. All of the persons connected with the execution of this document knew that Barry Kuhns owned the residence in question, that some sort of mortgage encumbered it, and that Barry Kuhns had other tangible and valuable assets which would be part of his distributable estate. No one seemed to have any particular or superior knowledge with respect to the value of these assets and each party appeared to

have a full opportunity to investigate that value with or without the assistance of counsel.

Additionally, we find no breach of a fiduciary duty on behalf of the administratrix, Mary Kuhns. The evidence indicates to us that John and Thomas Kuhns were not acting as agents or representatives of their mother or the estate in dealing with their father with respect to this document. Unaware of the precise language of section 6201, the sons presented this writing to their parents as a simple agreement by which these two estranged parties would be able to quickly and fairly resolve the disposition of the assets of their deceased son. Arthur Kuhns was given a full and fair opportunity to accept the proposal by his sons and did so in a circumstance in which he was given a broad opportunity to select particular assets from Barry Kuhns' estate which he wanted for himself. He did so without duress and without Mary Kuhns or her sons being guilty of withholding information pertinent to the resolution of this settlement agreement. Agreements among family members regarding the distribution of the assets of one who dies intestate are favored agreements in the law and a court is wise to enforce them wherever possible. See *Kurek Estate,* 8 Pa. Fiduc. 287 (1958). Accord, *In re Estate of Brojack,* 321 Pa. Super. 154, 467 A.2d 1175 (1983).

In the present case, Arthur Kuhns received consideration for his agreement. He was given an apparently unfettered opportunity to select the specific assets of his choice from this estate and was relieved of any obligation to pay a pro rata share of the expenses of the estate administration and inheritance taxes. He was able to achieve a current receipt of these items and was not required to wait for a period of time necessary to achieve a further

authorization for the release of those assets to him. Consideration for this may also be found in the mutual promise of Mary Kuhns that she would agree to take whatever assets remain from the estate, allowing Arthur free and clear possession of those items he had specifically requested.

Again, in the absence of any showing that Mary Kuhns withheld pertinent information from Arthur in reaching this agreement, we are compelled to conclude that Arthur Kuhns made a deal by which he is presently bound. His hindsight view of the circumstance does not call upon the law to save him from the results of a deal which he and the others involved struck in good faith.

An order dismissing the exceptions of Arthur B. Kuhns will be entered as follows:

## ORDER OF COURT

And now, May 4, 1989, it is hereby ordered, adjudged and decreed that the exceptions to schedule of distributions filed on behalf of Arthur B. Kuhns are hereby dismissed.